IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **GEORGE JONES, JR., #R56224,** )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>**C/O NAVARRETE,** )<br>**LIEUTENANT WHEELER,** )<br>**LIEUTENANT BUCHNER,** )<br>**C/O MCFARLAND,** )<br>**C/O HOUGH,** )<br>**C/O MOLEHOUR,** )<br>**C/O DEWESSE,** )<br>**C/O HARPER, and** )<br>**C/O HENCE,** )<br>)<br>Defendants. ) | Case No. 18−cv−1013−MJR |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff George Jones, Jr., an inmate in Menard Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights that allegedly occurred at Lawrence Correctional Center ("Lawrence"). In his Complaint, Plaintiff claims the defendants retaliated against him and subjected him to cruel and unusual punishment in violation of the First and Eighth Amendments. (Doc. 1). This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–

> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to allow this case to proceed past the threshold stage.

## **The Complaint**

In his Complaint (Doc. 1), Plaintiff makes the following allegations: on August 9, 2015 while he was incarcerated at Lawrence, Plaintiff filed a grievance against C/O Navarrete after he called Plaintiff a racially charged name. (Doc. 1, p. 7). On September 5, 2015, C/O Navarrete called Plaintiff to the control bubble and confronted Plaintiff about writing grievances. *Id.* Plaintiff told him that he did not want any problems, and Navarrete responded that Plaintiff should have thought of that before he wrote a grievance against him. *Id.*

Navarrete sent Plaintiff back to the deck, where he saw Plaintiff retrieve an oatmeal pie. *Id.* Navarrete called Plaintiff to the bubble again and asked him for the oatmeal pie. *Id.* Plaintiff refused, and Navarrete took no further action at that time. *Id.* After day room ended and the

2

chow line was called, each of the inmates' doors opened except for Plaintiff's. *Id.* Plaintiff asked other inmates to tell Navarrete and the lieutenant that his door did not open. *Id.* Once the chow line returned, Navarrete and Lieutenant Wheeler came to Plaintiff's door, and Navarrete told him that he should think next time before he writes a grievance on an officer. *Id.* Lieutenant Wheeler also added that the next time an officer asks Plaintiff for something, he had better give it to him. (Doc. 1, p. 8).

On September 9, when the doors began to open for chow, Lieutenant Buchner told Plaintiff to get into his cell. *Id.* Plaintiff asked him what the problem was, and he responded: "You [mess] with my officers, you [mess] with me." *Id.* Plaintiff told him that he had not done anything to anyone, and Buchner replied that Navarrete told him about Plaintiff. *Id.* Plaintiff was not allowed to go to chow that day. *Id.* On September 10, 2015 during lockdown, C/O McFarland opened chuckholes while C/O Navarrete passed out trays. *Id.* When Navarrete got to Plaintiff's cell, he told C/O McFarland not to open Plaintiff's chuckhole. *Id.* Plaintiff did not get dinner that day. *Id.* On September 30, 2015, Plaintiff filed three grievances against C/O Navarrete, Lieutenant Wheeler, Lieutenant Buchner, and C/O McFarland. (Doc. 1, p. 7). Plaintiff's grievances were denied by the counselor and the grievance officer. (Doc. 1, p. 8). On May 2, 2016, after Plaintiff appealed the denial to the Administrative Review Board ("ARB"), the Acting Director also denied it. *Id.*

On November 28, 2016, Plaintiff filed a grievance against three internal affairs officers, Hough, Molehour,[1] and Dewesse after he was approached by them about writing grievances against other officers. *Id.* They told Plaintiff that he looks good in a brown jump suit, and Molehour told him to stop writing grievances. (Doc. 1, p. 9). Molehour added that "if

---

[1] Plaintiff spells Defendant Molehour's name "Molenhour" throughout the Complaint. It is clear when he refers to Molenhour, he means Defendant Molehour. It is unclear at this time what the correct spelling is.

3

something was to happen to you we might or might now know who did it or how it happened." *Id.* Plaintiff's grievance was never answered. *Id.*

In mid-November, internal affairs officers Harper and Hence visited Plaintiff's cell, told his cellmate to get out, and questioned Plaintiff about the outcome of grievances he wrote against other officers in 2015. *Id.* Plaintiff told them that he never got a response, and Hence told him to stop lying. *Id.* Harper added: "Your [*sic*] going to find yourself in a situation. What if something was to happen to you then what?" *Id.* On November 29, 2016, Plaintiff filed a grievance against them, but he never received a response. *Id.* Plaintiff filed a second grievance against Harper on November 29, 2016 in response to Harper confronting him on November 23, 2016. *Id.* That day, Harper told Plaintiff that he gave him a fair warning but that Plaintiff did what he wanted instead and "now it's out of [Harper's] hand[s]." *Id.* Plaintiff asked him what he was talking about, and Harper told him to watch his back and step. *Id.*

On January 10, 2017, Plaintiff filed a grievance against Molehour in response to events that took place in November 2016. *Id.* On November 10, 2016, Plaintiff graduated from a program called Lifestyle Redirection. *Id.* Upon completion, Plaintiff was allowed to take two pictures to send home to his loved ones. *Id.* Counselor Bob Lovell, who was in charge of the program, took the pictures. (Doc. 1, p. 10). Plaintiff provided him with an envelope and money voucher to send the pictures out. *Id.* When his loved ones had not received the photos, Plaintiff inquired with Lovell, who told him that the pictures were turned over to intel for suspected gang activity. *Id.* Plaintiff then sent a request slip to intel asking about the pictures, but they never responded. *Id.* Later, Molehour came to Plaintiff's cell and told him that he would not get the pictures, nor would they be sent out. *Id.* He added: "We told you about writing grievances on our officers, and you wrote us up so now you know your shot." *Id.* Plaintiff's grievance against

4

Molehour was not granted, even after he appealed the denial to the ARB. (Doc. 1, pp. 10-11).

**Discussion**

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into 2 counts.[2] The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

**Count 1 –** First Amendment retaliation claim against defendants for treating Plaintiff poorly in response to grievances he filed in 2015-2016 to discourage him from filing future grievances.

**Count 2 –** Eighth Amendment cruel and unusual punishment claim against defendants for denying Plaintiff food and otherwise treating him poorly and threatening him in 2015-2016.

As discussed in more detail below, Count 1 will be allowed to proceed past threshold. Any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pleaded under the *Twombly* pleading standard.

**Count 1 – Retaliation**

To establish a claim of retaliation, Plaintiff "must show that he engaged in a protected activity, he suffered a deprivation likely to prevent future protected activities, and there was a causal connection between the two." *Felton v. Huibregtse*, 525 F. App'x 484, 486 (7th Cir. 2013) (citing *Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010); *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). Plaintiff has satisfied this standard as to each of the defendants, as his allegations indicate that each of the defendants initiated or otherwise participated in retaliatory

---

[2] Though Plaintiff designated 3 separate counts in this action, this first and second are properly conflated, as the defendants treating Plaintiff poorly based on grievances he filed in the past, to discourage him from filing grievances in the future, supports a single First Amendment retaliation claim. To the extent Plaintiff seeks to bring an access to the courts claim, the First Amendment guarantees the right to redress grievances and access the courts. However, such a claim only arises if the plaintiff suffered "actual injury" from the inability to pursue a non-frivolous claim. *Lewis v. Casey*, 518 U.S. 343 (1996); *May v. Sheahan*, 226 F.3d 876, 883 (7th Cir.2000); *Walters v. Edgar*, 163 F.3d 430, 434 (7th Cir. 1998). No such injury is apparent from the Complaint.

conduct in response to Plaintiff filing grievances, including denying Plaintiff meals, withholding Plaintiff's Lifestyle Redirection photographs, and/or verbally harassing, threatening, or intimidating him.[3] Count 1 will therefore proceed against each of the defendants.

### Count 2 – Cruel and Unusual Punishment

Plaintiff claims the defendants subjected him to cruel and unusual punishment in various ways, including by denying him meals and subjecting him to verbal threats. As to the food issue, an Eighth Amendment violation occurs if a prisoner is denied an "identifiable need such as food." *Reed v. McBride,* 178 F.3d 849, 853 (7th Cir.1999) (citing *Wilson v. Seiter,* 501 U.S. 294, 304 (1991)). In examining such claims, courts must assess the amount of food an inmate was deprived as well as the duration of the deprivation when determining whether an Eighth Amendment violation may have occurred. *Reed,* 178 F.3d at 853.

Plaintiff claims that Navarrete, Wheeler, Buchner, and McFarland deprived him of several meals from September 5 through September 10, 2015, and the allegations suggest that on September 9, 2015, Plaintiff was not allowed to go to any meals. Further factual development is required to determine whether this constituted an unconstitutional deprivation. Count 2 will therefore proceed against Navarrete, Wheeler, Buchner, and McFarland.

As to the threats, "[s]imple or complex, most verbal harassment by jail or prison guards does not rise to the level of cruel and unusual punishment. But some does." *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015) (citing *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003); *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996); *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir.

---

[3] Even if the verbal threats and acts of intimidation were not otherwise unconstitutional, if they were made in retaliation for the exercise of a constitutionally protected right (in this case, the right under the First Amendment to freely complain about the conditions of one's confinement), then they are actionable under § 1983. *See Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009) (discussing *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987)).

1986)). Threats of grave violence can constitute cruel and unusual punishment under the Eighth Amendment. *Dobbey v. Ill. Dep't of Corr.*, 574 F.3d 443, 445 (7th Cir. 2009).

In Plaintiff's case, he describes threats issued by Harper and Molehour suggesting bodily harm would befall him because of his filing grievances. Plaintiff has not alleged any such threats by Hence, Dewesse, or Hough, however. Considering the allegations, further development of the record is needed to determine if the alleged threats by Harper and Molehour amounted to cruel and unusual punishment. Count 2 shall therefore proceed against Molehour and Harper but will be dismissed without prejudice against Hence, Dewesse, and Hough because Plaintiff failed to allege any acts attributable to them amounting to cruel and unusual punishment.

## Pending Motion

Plaintiff's Motion for Recruitment of Counsel (Doc. 3) is **REFERRED** to United States Magistrate Judge Stephen C. Williams for a decision.

## Disposition

**IT IS HEREBY ORDERED** that **COUNT 1** shall **PROCEED** against **NAVARRETE, WHEELER, BUCHNER, MCFARLAND, HOUGH, MOLEHOUR, DEWESSE, HARPER**, and **HENCE.**

**IT IS FURTHER ORDERED** that **COUNT 2** shall **PROCEED** against **NAVARRETE**, **WHEELER**, **BUCHNER, MCFARLAND**, **MOLEHOUR**, and **HARPER** and is **DISMISSED** without prejudice as against **HENCE, DEWESSE, and HOUGH** for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that as to **COUNTS 1** and **2**, the Clerk of Court shall prepare for **NAVARRETE**, **WHEELER, BUCHNER, MCFARLAND, HOUGH, MOLEHOUR, DEWESSE, HARPER**, and **HENCE**: (1) Form 5 (Notice of a Lawsuit and

Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff.  If any defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Stephen C. Williams for further pre-trial proceedings.  Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Stephen C. Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 11, 2018**

                                                         **s/ MICHAEL J. REAGAN**
**Chief Judge**
**United States District Court**